The Honorable Laurel Beeler
United States District Court
Northern District of California
450 Golden Gate Avenue, 15th Floor
San Francisco, CA  94102

      Re:    *Xavier Pittman. v. City and County of San Francisco, et al.*
             United States District Court – San Francisco, 3:22-cv-02412-LB

Dear Magistrate Judge Laurel Beeler,

      Counsel for Plaintiff and Defendants—hereinafter, "the Parties"—hereby submit, at Plaintiff's request, this joint discovery letter pursuant to this Court's Standing Orders. The Parties met and conferred via Zoom videoconference and were able to narrow their disputes to a single issue related to Defendant McAuliffe's statement to the San Francisco District Attorney's investigators.

## I.    Statement of Unresolved Issue

      This case arises from an officer-involved shooting of Plaintiff Xavier Pittman on May 7, 2021. The outstanding discovery dispute is regarding the statement that Defendant San Francisco Police Officer Zachary McAuliffe—the officer who fired his weapon—gave to the San Francisco District Attorney (hereinafter "SFDA") regarding the incident. The SFDA interviewed Officer McAuliffe as part of its criminal investigation into Officer McAuliffe's conduct in the officer-involved shooting of Mr. Pittman. As of today, the City and County of San Francisco (the "City") has not produced Defendant McAuliffe's initial compelled statement that was given to SFDA. The City has, however, produced the public statement made by Officer McAuliffe, the compelled statement made to the Internal Affairs division of the San Francisco Police Department, and the compelled statement made to the Department of Police Accountability. The Parties disagree as to whether the SFDA when investigating and deciding whether to charge and prosecute a crime against Officer McAuliffe, should be considered the City's agency for purposes of disclosing documents pursuant to the Rule 34 Requests for Production Documents that Plaintiff has served on the City or whether, instead, SFDA acts as a state agency and is consequently a third party from whom records must be subpoenaed.

## II.    Plaintiff's Position Statement
###     a.  The SFDA is an Agency of Defendant CCSF

Plaintiff disagrees with Defendants that the SFDA is a third party in this matter. In cases where a district attorney is treated as a state official rather than a county employee, it has been in the context of the district attorney acting within their prosecutorial powers. *See Weiner v. San Diego County,* 210 F.3d 1025, 1031 (9th Cir. 2000) ("Although a California district attorney is a state officer when deciding whether to prosecute an individual, this is not to say that district attorneys in California are state officers for all purposes.") In *Modoc County v. Spencer*, the California Supreme Court elaborated on this: "[A district attorney] is at once the law officer of the county and the public prosecutor. While, in the former capacity, he represents the county […] he [does not] in the latter. In the prosecution of criminal cases he acts by the authority and in the name of the people of the state." 37 P. 483, 484 (1894); *see also, Sloane v. Hammond*, 81 Cal.

App.590, 599 (1927) ("[F]or some purposes a district attorney is a county officer, and as such exercises some of the 'powers' of a county.")

Here, the Defendant CCSF's agency, SFDA, reportedly refused to disclose Defendant's recorded statement regarding the shooting of Plaintiff that was provided to City homicide detectives and is in the County's possession. Being obstinate while in mere possession of evidence for an unrelated civil rights claim is not acting in in "the prosecution of criminal cases". *Id.* The cases relied on by Defendants in asserting that SFDA is a state official merely stand for the principle that district attorneys are considered state officials when they are sued for **their decisions** to prosecute or not prosecute a criminal case. *See Weiner,* 210 F.3d at 1030-31 ("The question, therefore, is whether the district attorney acted as a county official or a state official **when he decided to proceed with Weiner's criminal prosecution.")** (emphasis added); *Pitts v. County of Kern,* 17 Cal. 4th 340, 345 (1998) (holding that the district attorney is a state official "when preparing to prosecute and when prosecuting crimes"). Neither case addressed whether or not the district attorneys' mere status as the district attorney precluded the respective counties from being able to respond to Rule 34 requests when the documents requested were evidence collected by the DA's office in the underlying case.

The Ninth Circuit more recently elucidated the district attorneys' role under the California Constitution in *Goldstein v. City of Long Beach,* 715 F.3d 750 (9th Cir. 2013). There, the Court explained that district attorneys were on the list of county officials in a 1986 Amendment, which shows that the most recent trend in California is to confirm the district attorney's place as a county officer. See Cal. Const. Art. XI, § 1(b), historical notes; *Id.* at 757. In fact, "[t]he board of supervisors shall supervise the official conduct of all county officers," including the district attorney, and the district attorney's use of public funds. *Id* quoting Cal. Gov. Code § 25303. The county board of supervisors "exercise[s] a general supervision" over the district attorney, and for most purposes, district attorneys are treated as "normal" county employees. *Id.; see also McMillian,* 520 U.S. at 790 (alterations in original).

Defendants have not and cannot cite to any case where the state official status is extended in civil litigation to the withholding of evidence collected by district attorneys. Accordingly, Plaintiff contends that the SFDA is clearly Defendant CCSF's agency in this context and cannot shield themselves from production of the sought after interview by way of contending their refusal to produce McAuliffe's recorded statement constitutes prosecutorial decision-making. Moreover, Defendant McAuliffe's is the one that provided the statement – so he knows what he said – and provided that statement to City detectives – so CCSF knows what he said – and so Plaintiff fails to see how production of the statement could impact either the County District Attorney's case against McAuliffe.

### b. Defendants Cannot Claim Privilege Under Cal. Pen. Code §832.7 Regarding McAuliffe's Statement to the District Attorney's Office's

Should this Court rule that the SFDA is a Defendant CCSF agency for purposes of civil discovery, Defendants also contend that Defendant McAuliffe's statement to the SFDA is privileged under Cal. Pen. Code §832.7. Plaintiff disputes this contention.

Where §832.7(b)(8) permits an agency to withhold records that are subject of an active criminal investigations, §832.7(b)(8)(A)(ii-iii) explicitly state that withheld documents must be disclosed "by no later than 18 months after the date of incident". As this incident occurred on May 7, 2021, the 18 month mark occurred on November 7, 2022, yet Defendant CCSF has still

failed to disclose Defendant McAuliffe's statements. §832.7(b)(8)(A)(iii) states that documents may be continued to be withheld past 18 months only in "extraordinary circumstances [that] warrant continued delay" and the withholding agency "must show by clear and convincing evidence that the interest in preventing prejudice to the active and ongoing criminal investigation or proceeding outweighs the public interest in prompt disclosure of records or use of force by peace officers". Defendants have made no such showing.

However, whether §832.7 protects against disclosure is ultimately a moot point because Plaintiffs have brought a federal civil rights case against the Defendants under 42 U.S.C. §1983. (ECF No. 1, Plaintiff's Operative Complaint). "Federal courts, however, have found that §832.7 is not applicable in evaluating discovery disputes in 42 U.S.C. §1983". *Vargas v. County of Los Angeles,* 2020 WL 4032671, at *4 (C.D. Cal., May 11, 2020); *see also Medina v. County of San Diego,* 2014 WL 4793026, at *7(S.D. Cal., Sept. 25, 2014) ("[t]o the extent the Defendant relies on the privilege set forth in California Penal Code section 832.7, federal courts do not recognize section 832.7 as relevant to evaluating discovery disputes in 42 U.S.C. §1983 cases").

### c. Defendant McAuliffe's Statement to SFDA Is Not Protected by the Official Information Privilege

Defendants maintain that Defendant McAuliffe's statement to the SFDA is privileged under the official information privilege. Federal common law recognizes a *qualified* privilege for official information. *Kerr v. United States Dist. Ct. for N.D. Cal.*, 511 F.2d 192, 198 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976). To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery. *Jepsen v. Florida Bd. of Regents*, 610 F.2d 1379, 1384–85 (5th Cir. 1980) (cited to approvingly in *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033–34 (9th Cir. 1990)). "In the context of civil rights suits against police departments, [the official information] balancing approach should be 'moderately pre-weighted in favor of disclosure.'" *Soto v. City of Concord,* 162 F.R.D. 603, 613 (N.D. Cal. 1995) (quoting *Kelly v. City of San Jose,* 114 F.R.D. 653, 661 (N.D. Cal 1987)).

However, before courts reach this balancing test, "the party asserting the privilege (the defendant police department) must properly invoke the privilege by making a substantial threshold showing[..by] submit[ting] a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Id.* As of February 2, 2023, the Defendant CCSF has produced no such declaration, therefore waiving their right to assert the official information privilege. They have not even produced a privilege log as required under FRCP 26 (b)(5)(i–ii)) despite repeated requests. *Porter v. CCSF,* 2018 WL 4215602 at *7 (N.D. Sept. 5, 2018) (privilege assertion waived for failure to produce privilege log despite reminders from opposing counsel); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1148–49 (9th Cir. 2005) (same).

However, even if this Court was forced to apply the balancing test, the benefits of disclosure far outweigh the potential disadvantages of disclosure in this matter. The relevance of Defendant McAuliffe's statements on his shooting of Plaintiff is clear. This is a case where Defendant McAuliffe has claimed that he accidentally shot Plaintiff. His initial statement to SFPD's homicide detectives and SFDA will help determine what his initial recounting of the shooting was and whether his accounting of the event has remained consistent over time. This statement is crucial to Plaintiff's determination of Defendant McAuliffe's credibility.

### d. Plaintiff's Proposed Compromise

Plaintiff proposes that Defendant CCSF promptly produces Defendant McAuliffe's statement to the SFDA regarding his shooting of Plaintiff. Plaintiff will not seek sanctions against Defendant CCSF for failing to timely produce these documents and for failure to identify them as withheld documents in their discovery responses.

## III. Defendants' Position Statement
### a. The San Francisco District Attorney's Investigation of Potential Crime and Decision on Whether to Prosecute Is a State Function

The City Attorney's Office does not represent the SFDA when it is investigating and prosecuting crimes. Thus, the City Attorney's Office subpoenaed the SFDA's file in this matter. That subpoena was met with only objections related to its ongoing criminal investigation, and the SFDA refused to provide the City Attorney's Office with its file in this matter. Importantly, the SFDA entitled its objections to the City's subpoena as "Third Party San Francisco District Attorney's Response and Objection to Subpoena Duces Tecum." The City provided Plaintiff's counsel with both its subpoena and the objections. A copy of the City's subpoena and the SFDA's objections are attached as Exhibit A and B, respectively. Plaintiff was served with the City's subpoena in July of 2022. To the City's knowledge, despite the passage of over six months in which Plaintiff could have acted, and the City's repeated representations to Plaintiff that it does not represent SFDA here, Plaintiff has still not subpoenaed the SFDA.

Plaintiff concedes, as he must, that when investigating and prosecuting crimes, the SFDA is a state official, not a City official. *See Pitts v. County of Kern*, 17 Cal.4th 340, 353-354 (1998); *see also Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000) (District Attorneys act as state officials, [] when "acting in [their] prosecutorial capacity."). In the *Goldstein* case, cited by Plaintiff, the question was whether the District Attorney was acting as a state or county official when adopting office-wide policies relating to the use of jailhouse informants. The court there held that when adopting policies, the District Attorney was a county official. However, it distinguished the facts at issue in that case from *Weiner* stating "Because we do not address the decision to prosecute an individual, the analysis in *Weiner* does not resolve the question before us today." *Goldstein v. City of Long Beach*, 715 F.3d 750, 760 (9th Cir. 2013). The Ninth Circuit reiterated *Weiner's* holding in the *Goldstein* decision that "a county district attorney acts as a state official when deciding whether to prosecute an individual." *Id.* (quoting *Weiner*, 210 F.3d at 1030). Here, like in *Weiner*, the SFDA is deciding whether to prosecute Officer McAuliffe, not adopting a general policy as was the case before the court in *Goldstein*.

The criminal investigation into Officer McAuliffe by SFDA remains open. There is no clearer prosecutorial function than the decision on whether to charge a crime, and so here the SFDA in collecting information to decide whether to charge a crime against Officer McAuliffe was a state actor and not a City actor. The SFDA's decision on whether to produce something that it avers might jeopardize its investigation and prosecution (a state function) and that it avers is subject to its prosecutorial privilege is its own.[1]

---

[1] Plaintiff claims that Defendants "have not and cannot cite to any case where the state official status is extended in civil litigation to the withholding of evidence collected by district attorneys." This is false. Several district courts

As a practical matter, SFDA did not produce the contents of its file to the City Attorney's Office, and thus the City Attorney's Office does not have that file to produce. Plaintiff remains free to subpoena the SFDA (who actually has the file) and litigate any objections with it.

### b. Officer McAuliffe's Statement to SFDA Is Subject to State and Federal Privilege

As a general matter, the City agrees that after the enactment of SB 1421, records related to the discharge of firearms by law enforcement must be produced within 18 months of the incident. Cal. Pen. Code § 832.7(b)(8)(A)(ii-iii). This general rule does not apply in this case. The statement by Officer McAuliffe necessarily discusses the crime spree Mr. Pittman was engaged in before the incident, felonies for which Officer McAuliffe was attempting to arrest Mr. Pittman when the incident occurred, and felonies for which Mr. Pittman has been criminally charged. The statute makes clear that where a charge has been filed "the agency may delay the disclosure of records of information until a verdict on those charges is returned at trial or, if a plea of guilty or no contest is entered, the time to withdraw the plea pursuant to Section 1018." Cal. Pen. Code § 832.7(b)(8)(B).

The City also expects that the compelled statement to SFDA is subject to the official information privilege and is part of an ongoing investigation into Officer McAuliffe, which the SFDA asserted in its objections . The City generally agrees with the statement of the law on the (admittedly conditional) official information privilege, citing *Sanchez*, *Soto*, and *Kelly*, put forth by Plaintiff above.

The City made clear in its discovery responses that "Once Defendant has collected and identified any documents subject to the official information privilege and served a privilege log, Defendant will provide the appropriate declaration establishing the applicability of the privilege; at the time of this response, the specific documents have not yet been identified." The City Attorney's Office is still collecting documents; it does not have the SFDA file, due to the objections leveled by SFDA. Indeed, the SFDA asserted, among other things, the official information privilege and provided a declaration with the "Third Party San Francisco District Attorney's Response and Objection to Subpoena Duces Tecum" supporting that privilege.

The parties requested an early settlement conference. ECF Dkt. No. 19 at 9. The parties agreed to do focused discovery in advance of the settlement conference.[2] It would be intensely burdensome on the City and its investigators to seek new, detailed declarations each time a privileged document is created or identified as part of still-ongoing investigations. The City thus planned (and plans) to provide a fulsome declaration once the universe of documents is identified and largely complete (notably Plaintiff has and can weigh the declaration provided by SFDA). Practically, in this case, the City cannot put together a declaration for an interview that SFDA

---

have allowed prosecutors to resist documentary and deposition discovery based on prosecutorial immunity (which attaches under the 11th Amendment due to their being state actors). *See Dowling v. Arpaio*, 2011 WL 1456732 at *5 (D. Ariz. Apr. 15, 2011); *Karunyan v. Cty. of Maricopa*, 2015 WL 13747126 (D. Ariz. Feb. 3, 2015); *Chang v. United States*, 246 F.R.D. 372 (D.D.C. 2007). The law in this area is unsettled and case-specific. *Athwal v. Cty of Stanislaus*, 2022 WL 3018428 at **5-6 (E.D. Cal. Jul. 28, 2022) (collecting cases); *Colonies Partners LP v. Cty. of San Bernardino*, 2019 WL 7905894 at *5 (C.D. Cal. Dec. 5, 2019 (collecting cases). However, as noted in the main text, SFDA is a state not a county actor here and so the City is not the right party to make these arguments.

[2] Indeed, the City sent a meet and confer letter on Plaintiff's inadequate discovery responses in September which Plaintiff did not acknowledge until over a month later and Plaintiff has still not substantively responded to. The City has not pressed this point as it understands the parties are in a settlement posture.

has refused to produce to the City. The law cannot require the City to intuit what a file it does not have might say or might not say and prepare a declaration under penalty of perjury for the supposed contents of that file that was not produced to it.

### c. The City's Proposed Compromise

The City has already compromised by providing Officer McAuliffe's compelled statement to SFPD Internal Affairs (in response to earlier meet and confer), and Officer McAuliffe's compelled statement to the Department of Police Accountability (in response to an earlier phase of this round of meet and confer, something the City managed to do on a very rapid turnaround). Those are the statements given to City Departments, and the City has produced them subject to the Parties' protective order. The SFDA refused to produce its file in response to the City's subpoena. The City cannot see how it could compromise to produce a file it does not have and that is equally available (or unavailable) to Plaintiff.

      Sincerely,

By:   /s/ TY CLARKE
      ADANTÉ D. POINTER
      PATRICK BUELNA
      TY CLARKE
      Attorneys for Plaintiff


DAVID CHIU
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
THOMAS S. LAKRITZ
S. PATRICK KELLY
Deputy City Attorneys


By: /s/ THOMAS S. LAKRITZ
      THOMAS S. LAKRITZ

      Attorneys for Defendants
      CITY AND COUNTY OF SAN FRANCISCO;
      ZACHARY MCAULIFFE